# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

**UNITED STATES OF AMERICA**

**SEALED**

v.                                          **INDICTMENT**

**JUSTIN LEWIS**

_____/          1:18cr15 MW|GRJ

## THE GRAND JURY CHARGES:

### COUNTS ONE THROUGH NINE

### A. INTRODUCTION

At all times material to this Indictment:

1.   **JUSTIN LEWIS** owned and operated Page Plus Unlimited, LLC

("Page Plus Unlimited"), a business that offered wireless communications service

and equipment to the public.

2.   **JUSTIN LEWIS** was the chief executive officer of Page Plus

Unlimited.

3.   **JUSTIN LEWIS** offered wireless communications service and

equipment to the public through Razor Repair, a business operated by L.M.,

mother of **JUSTIN LEWIS.**



4.     Verizon Wireless ("Verizon") was a telecommunications company that offered wireless communications service and equipment to the public.

5.     Florida Credit Union ("FCU") was a credit union headquartered in Gainesville, Florida.

6.     **JUSTIN LEWIS** established, maintained, and had sole signature authority on an FCU account ending in -7885 (the "FCU Account") that he used to receive funds derived from the sale of wireless data and equipment.

## B. THE CHARGE

Between on or about September 28, 2015, and on or about February 26, 2018, in the Northern District of Florida and elsewhere, the defendant,

## JUSTIN LEWIS,

did knowingly and willfully devise, and intend to devise, a scheme to defraud and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme, did cause wire communications to be transmitted in interstate commerce.

## C. SCHEME TO DEFRAUD

It was part of the scheme to defraud that:

1.     **JUSTIN LEWIS** was engaged in the business of reselling Verizon monthly wireless data plans and devices.

2

2.      Prior to September 28, 2015, **JUSTIN LEWIS** obtained wireless data plans from third party providers for at least $120 per line, which he then sold to his customers.

3.      On or about September 28, 2015, **JUSTIN LEWIS** entered into an agreement with Verizon on behalf of Razor Repair to obtain a corporate account for the purchase of wireless service and equipment at discounted prices under the false pretense that the wireless service and equipment would be used for the needs of Razor Repair's business and employees.

4.      On or about November 20, 2015, **JUSTIN LEWIS** entered into an agreement with Verizon on behalf of Page Plus Unlimited to obtain a corporate account for the purchase of wireless service and equipment at discounted prices under the false pretense that the wireless service and equipment would be used for the needs of Page Plus Unlimited's business and employees.

5.      Under the Page Plus Unlimited Agreement and Razor Repair Agreement, **JUSTIN LEWIS** obtained wire data services and equipment at wholesale prices, which he then resold to third parties at a profit.

6.      In or about December 2016, **JUSTIN LEWIS** falsely represented to a Verizon employee that the wireless data services and equipment Verizon was selling to **JUSTIN LEWIS** under the Page Plus Unlimited Agreement were being

3

used by Page Plus Unlimited managers and employees, when, in fact, they were being used by **LEWIS**'s third-party customers.

7.     On or about January 20, 2017, **JUSTIN LEWIS** falsely represented to a Verizon employee that: (1) he was not using the lines of service purchased under the Razor Repair Agreement and Page Plus Unlimited Agreement for resale purposes; (2) that Page Plus Unlimited had seventy-eight physical storefronts where he sold wireless products; and (3) the lines obtained from Verizon under the Page Plus Unlimited Agreement were provided to employees of Page Plus Unlimited physical stores.

8.     On or about January 20, 2017, **JUSTIN LEWIS** represented to a Verizon employee that he never used a website known as Wireless Management Solutions, when in truth and fact, **JUSTIN LEWIS** used the Wireless Management Solutions website to receive recurring monthly payments from customers to whom he had resold unlimited data plans he fraudulently obtained from Verizon.

9.     On or about January 18, 2017, **JUSTIN LEWIS**, misrepresenting himself as A.M., acquired International Technology Solutions, a corporate shell entity, from Wyoming Corporate Services for $1,095.

10.     On or about February 8, 2017, to conceal his identity from Verizon, **JUSTIN LEWIS** misrepresented himself as A.M. and affixed a signature purporting to be A.M.'s to an agreement with Verizon on behalf of International

4

Technology Solutions to obtain a corporate account for the purchase of wireless service and equipment at discounted prices under the false pretense that the wire service and equipment would be used for the needs of International Technology Solutions business and employees.

11.    On or about February 8, 2017, **JUSTIN LEWIS** established service for eighty-nine lines of wireless data service under the International Technology Solutions Agreement. **JUSTIN LEWIS** transferred eighty-eight of these lines from accounts he had obtained under the Page Plus Unlimited and Razor Repair Agreements to the International Technology Solutions Agreement.

12.    In or about March of 2017, **JUSTIN LEWIS**, using the name of A.M., acquired Paxton Industries Inc. ("Paxton Industries"), a Delaware corporation.

13.    On or about March 22, 2017, to conceal his identity from Verizon, **JUSTIN LEWIS** misrepresented himself as A.M. and affixed a signature purporting to be A.M.'s to an agreement with Verizon on behalf of Paxton Industries to obtain a corporate account for the purchase of wireless service and equipment at discounted prices under the false pretense that the wire service and equipment would be used for the needs of Paxton Industries business and employees.

5

14.     On or about March 22, 2017, **JUSTIN LEWIS** transferred thirteen lines of service from accounts under the Page Plus Unlimited Agreement or Razor Repair Agreement to the Paxton Industries Agreement.

15.     To obtain and retain the business of third-party customers to whom he was reselling Verizon data services, **JUSTIN LEWIS** made the following false representations and promises:

a.     On or about January 27, 2017, **JUSTIN LEWIS** falsely represented to an agent of S.O., owner of Frenchman's Wilderness Campground and one of **LEWIS**'s customers, that Verizon would not cancel S.O.'s wireless service because of the type of account **LEWIS** had;

b.     **JUSTIN LEWIS** falsely represented to R.K., one of his customers, that, (1) he was not a reseller; (2) he obtained data lines as a bundle, and (3) he was able to sell the excess lines he possessed; and

c.     **JUSTIN LEWIS** falsely represented to J.T., one of his customers, that he was an authorized Verizon reseller and January 2018 service interruptions were due to one of Lewis's employees embezzling funds from his company.

6

16.     By this scheme to defraud, **JUSTIN LEWIS** fraudulently obtained

approximately $1,615,650.

### D.  WIRE COMMUNICATIONS

On or about the following dates, for the purpose of executing the scheme to

defraud, the defendant,

### JUSTIN LEWIS,

knowingly did cause wire communications to be transmitted in interstate

commerce as set forth below:

| COUNTS | DATE | COMMUNICATION |
|---|---|---|
| 1 | December 6, 2016 | $179.99 check deposit into the FCU Account from D.W. |
| 2 | December 6, 2016 | $179.99 check deposit into the FCU Account from R.K. |
| 3 | December 6, 2016 | $164.99 check deposit into the FCU Account from J.T. |
| 4 | December 6, 2016 | $189.99 check deposit into the FCU Account from T.W. |
| 5 | April 24, 2017 | $190.00 check deposit into the FCU Account from D.C. |
| 6 | May 9, 2017 | $189.99 check deposit into the FCU Account from T.W. |
| 7 | July 5, 2017 | $189.99 check deposit into the FCU Account from T.W. |
| 8 | July 5, 2017 | $190.00 check deposit into the FCU Account from Ohio PC Solutions |
| 9 | August 8, 2017 | $190.00 check deposit into the FCU Account from Frenchman's Wilderness Campground |

7

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT TEN

Between on or about January 18, 2017, and on or about February 26, 2018, in the Northern District of Florida, the defendant,

## JUSTIN LEWIS,

did knowingly possess and use, without lawful authority, a means of identification of another person, to wit, the name of A.M., during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c)(2), that is, wire fraud, as charged in Counts One through Nine of this Indictment.

In violation of Title 18, United States Code, Section 1028A(a)(1).

## CRIMINAL FORFEITURE

The allegations contained in Counts One through Nine of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture. From his engagement in the violations alleged in Counts One through Nine of this Indictment, the defendant,

## JUSTIN LEWIS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all of the defendant's right, title, and interest in any property, real and personal, constituting,

8

and derived from, proceeds traceable to such offenses.  The property to be forfeited

includes, but is not limited to, the following:

1.      Real Property located at 14916 West Sanddollar Lane, Crystal River,

Florida, with all improvements and appurtenances thereon, more particularly

described as:

A Tract of land being Lot 4, in Block B, of Sunny Isle Estates, Unit No. 1, an unrecorded subdivision being more particularly described as follows:

Commence at a squared Cedar Stake at the Southeast corner of Section 34, Township 18 South, Range 16 East, Citrus County, Florida, and run due West 10,560.00 feet to the Southeast corner of Section 34, Township 18 South, Range 16 East, thence run due North 1786.05 feet; thence run North 51 degrees 16 minutes 51 seconds East 14.98 feet; thence run North 30 degrees 21 minutes 30 seconds East 139.30 feet; thence run North 59 degrees 38 minutes 30 seconds West 1195.00 feet to the Point of Beginning; thence continue North 59 degrees 38 minutes 30 seconds West 75.00 feet; thence run South 30 degrees 21 minutes 30 seconds West 238.73 feet to the Mean High Water line of a Salt Water Bay; thence run Southeasterly along the Mean High Water line of said Salt Water Bay to a point that is South 30 degrees 21 minutes 30 seconds West 267.00 feet from the Point of Beginning; thence run North 30 degrees 21 minutes 30 seconds East 267.00 feet to the Point of Beginning.

2.      Real property located at 13280 SW 61st Place Road, Ocala,

Florida, with all improvement and appurtenances thereon, more particularly

described as:

Lot 18, Block 142 of ROLLING HILLS, UNIT FIVE, according to the plat thereof as recorded in Plat Book L, Pages 77-91, of the Public Records of Marion County, Florida.

9

3.   Contents of Fidelity Investment Account Y98-179019 held in the name of Justin Lewis in the amount of $68,977.15, with any interest and/or dividends earned thereon, and any appreciation thereof;

4.   Contents of Florida Credit Union Account #427885, Checking Account #0008, in the name of Justin Lewis in the amount of $107,594.41, with any interest earned thereon;

5.   Contents of Centerstate Bank Account #1601194 in the name of L.M. in the amount of $37,058.70, with any interest earned thereon;

6.   Contents of Centerstate Bank Account #5115738 in the name of L.M. and Razor Repair, in the amount of $3,569.26, with any interest earned thereon;

7.   Contents of Bank of Ozarks Account #2167201645 in the name of Justin Lewis, in the amount of $479.69, with any interest earned thereon;

8.   Contents of SunTrust Account #1000200461977 in the name of Justin Lewis, in the amount of $83,860.12, with any interest earned thereon;

9.   Contents of Smartypig, LLC Savings Account #376051 in the name of L.M., in the amount of $25,500.00;

10.   Contents of American Express High Yield Savings Account #1517746747 in the name of Justin Lewis, in the amount of $83,575.70;

10

11.     Contents of PayPal Account #22732399278496599254 in the name of L.M., in the amount of $2,308.15;

12.     Contents of PayPal Account #17221732059111354000 in the name of N.S., in the amount of $964.94;

13.     $1,724.00 in United States currency; and

14.     Telecommunications equipment.

If any of the property described above as being subject to forfeiture, as a result of acts or omissions of the defendant:

       i.      cannot be located upon the exercise of due diligence;

      ii.     has been transferred, sold to, or deposited with a third party;

     iii.    has been placed beyond the jurisdiction of this Court;

     iv.     has been substantially diminished in value; or

      v.      has been commingled with other property that cannot be subdivided without difficulty,

11

it is the intent of the United States, pursuant to Title 21, United States Code,

Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c),

to seek forfeiture of any other property of said defendant up to the value of the

forfeitable property.

A TRUE BILL:

_____

_____6·26·18_____
DATE

_____
CHRISTOPHER P. CANOVA
United States Attorney

_____
JASON BEATON
Assistant United States Attorney

12